UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| GORSS MOTELS, INC., individually and as the representative of a class of similarly-situated persons, *Plaintiff*, v. AT&T MOBILITY LLC and AT&T MOBILITY NATIONAL ACCOUNTS LLC, *Defendants*. | Civil No. 3:17cv403 (JBA) March 15, 2018 |

**RULING ON DEFENDANTS' MOTION TO DISMISS**

Plaintiff Gorss Motels, Inc., suing individually and as the representative of a class of similarly situated persons, alleges that Defendants AT&T Mobility LLC and AT&T Mobility National Accounts LLC (together "AT&T" or "Defendant") sent unsolicited facsimiles ("faxes") to Gorss Motels and other similarly situated plaintiffs in violation of the Telephone Consumer Protection Act ("TCPA"), as amended by the Junk Fax Prevention Act ("JFPA"). Defendant moves [Doc. # 40] to dismiss the Amended Complaint [Doc. # 39]. For the reasons articulated below, Defendant's Motion is denied.

I. **Facts Alleged in Plaintiff's Amended Complaint**

Defendant sent fax advertisements to Plaintiff and a class of other persons, "including, but not limited to," an unsolicited advertisement sent "[o]n or about January 13, 2014." (Am. Compl. ¶ 11; *see* Ex. A (the Fax) to Am. Compl. [Doc. # 39-1].) That fax states, "Learn about AT&T's new Mobile Share Value Plan!" and "For a limited time, switch from T-Mobile and receive up to $450 when you trade in your current smartphone!" (*See* Ex. A to Am. Compl.) It further states, "All products and services are manufactured and/or provided by AT&T and not Wyndham Worldwide Corporation ("Wyndham") or its affiliates," and "Neither [Wyndham] nor its affiliates are

responsible for the accuracy or completeness of any statements made in this advertisement, the content of this advertisement (including the text, representations and illustrations) or any material on a website to which the advertisement provides a link or a reference." (*Id.*)

Defendant "did not obtain Plaintiff's 'prior express invitation or permission' before sending Exhibit A." (Am. Compl. ¶ 19). The fax was sent "on behalf of" AT&T "pursuant to an agreement with Wyndham Worldwide Corporation or one of its affiliates." (*Id.* ¶ 15). The "goods or services" advertised in Exhibit A are AT&T's, and AT&T "receive[s] some or all of the revenues" from the sale of those goods or services. (*Id.* ¶¶ 16–17).

In fine print at the bottom of the page, the fax says, "To opt out from future faxes, email strategic.sourcing@wyn.com or call this tollfree number: (877) 764-4212" (Ex. A to Am. Compl.), which Plaintiff alleges is non-compliant with 47 C.F.R. § 64.1200(a)(4) because it is not "clear and conspicuous; . . . does not state that a sender's failure to comply within 30 days with an opt-out request that complies with the regulations is unlawful" and fails to "contain a fax number to which the recipient can send an opt-out request." (Am. Compl. ¶ 22.)[1]

Defendant's unsolicited advertisements caused "concrete injury" to Plaintiff because (1) they: "used the Plaintiff's and the other class members' telephone lines and fax machine[s]," (2) "caused Plaintiff and the other recipients to lose paper and toner consumed in the printing of the Defendants' faxes," (3) "cost the Plaintiff and the other class members time" that "otherwise would have been spent on the Plaintiff's and the other class members' business activities," and (4)

---

[1] Plaintiff clarified at oral argument that the opt-out notice allegations are pled in anticipation of Defendant asserting an "established business relationship" ("EBR") defense or asserting that the fax was otherwise solicited, and not as a separate cause of action.

"unlawfully interrupted the Plaintiff's and other class members' privacy interests in being left alone." (*Id.* ¶ 41).

II. Discussion[2]

Plaintiff asserts a single cause of action claiming that AT&T sent unsolicited fax advertisements to Plaintiff and a class of other persons. As part of that claim, it argues that even if AT&T claims to have sent its faxes pursuant to an EBR or with the recipients' "prior express invitation or permission," the failure of Defendant to comply with the opt-out notice requirements set forth in 47 C.F.R. § 64.1200(a)(4)(iii) & (iv) constitutes the transmission of an unsolicited advertisement. Defendant argues that Plaintiff's claim must be dismissed because it fails to sufficiently allege Plaintiff never gave permission to receive the fax. Defendant further contends that because the faxes were actually solicited, no opt-out notice is required and that, to the extent Plaintiff relies only upon the insufficient opt-out notice to support its claim, it has not alleged a concrete and particularized injury and therefore lacks standing.

A. Plaintiff Alleged the Fax was Unsolicited Under the TCPA

The Junk Fax Provisions of the TCPA make it unlawful for "any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile

---

[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

3

machine, an *unsolicited* advertisement[.]" 47 U.S.C. § 227(b)(1)(c) (emphasis added). The TCPA defines unsolicited advertisement to mean "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person *without that person's prior express invitation or permission, in writing or otherwise.*" 47 U.S.C. § 227(a)(5) (emphasis added). Thus, in order for Plaintiff to make out a valid TCPA claim, the fax at issue must have been sent without its prior express permission, i.e. consent. *See e.g. Cochran v. Massey*, No. 3:12-CV-765 DRH DGW, 2014 WL 335288, at *2 (S.D. Ill. Jan. 30, 2014) ("The question of permission or consent is . . . dispositive . . . under the TCPA.").

Defendant argues that Plaintiff failed to allege that it had not given permission to receive the fax from the physical sender, Wyndham, and therefore that it cannot state a claim under the TCPA.[3] Put otherwise, Defendant contends there can be no claim against a company whose products are advertised in a fax if the plaintiff separately provided permission to the entity that actually sent the fax.

Plaintiff claims it need not allege it never gave Wyndham permission, because the "sender" as defined in 47 C.F.R. § 64.1200(f)(10) was AT&T. There are two ways in which a person or entity may qualify as a sender. First, the term sender "means the person or entity on whose behalf a

---

[3] Plaintiff contends that because it alleges in the Complaint that the fax was an "unsolicited advertisement" as defined by the TCPA, the reasonable inference is that no person or entity obtained Plaintiff's prior express invitation or permission to send the fax. As Defendant points out, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). Here, an assertion that the fax was unsolicited, without any context that shows Plaintiff did not give permission to receive the fax, would not be sufficient to state a claim if indeed Plaintiff were required to plead it did not give permission to Wyndham.

4

facsimile unsolicited advertisement is sent." 47 C.F.R. § 64.1200(f)(10). Here, Plaintiff alleges the fax was sent on behalf of Defendant.[4] Second, the fax sender may be defined as the person or entity "whose goods or services are advertised or promoted in the unsolicited advertisement." *Id.* These regulations and the case law interpreting them make clear that the question is not who physically sent the fax, but which party benefitted from it being sent. *See id.*; *see also Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 637 (6th Cir. 2015) ("The pertinent FCC regulations are explicit that the party whose goods or services are advertised—*and not the fax broadcaster*—is the sender." (emphasis added)); *Senior Care Grp., Inc. v. Red Parrot Distribution, Inc.*, No. 8:17-CV-760-T-27TGW, 2017 WL 3288288, at *2 (M.D. Fla. Aug. 1, 2017) ("[t]he 2008 Junk Fax Order also explains that the sender does not need to be the individual who actually sent the fax, only that the sender is the benefitting party."); *Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 620 n.2 (S.D. Cal. 2015) ("[A] company can 'send' an unsolicited fax advertisement without directly participating in the physical transmission of such a fax."). In other words, while the physical sender *may* be a covered "sender" for purposes of the TCPA, the mere fact of having physically sent the fax does not make an entity a statutorily identified "sender."

Defendant presents no authority supporting its claim that as the party that physically transmitted the fax, Wyndham constitutes a "sender" under the regulation.[5] Instead, it supports its

---

[4] Defendant urges that Wyndham was also the sender, as the "person or entity on whose behalf" the fax was sent, but the only product advertised in the fax was AT&T's, and the fax specifically stated that "[a]ll products and services are manufactured and/or provided by AT&T and not Wyndham . . . or its affiliates." (Ex. A to Am. Compl.)

[5] In support of its contention that Plaintiff must allege it did not provide permission to receive these types of faxes from Wyndham, Defendant cites *Comprehensive Health Care Sys. of Palm Beaches, Inc. v. Vitaminerals VM/Orthopedics, Ltd.*, 2017 WL 27263 (N.D. Ohio Jan. 3, 2017). There, the plaintiff alleged that a company that manufactured the product which was advertised in

5

position with two cases in which the plaintiffs had given permission, in some form, to the sender (as defined under the regulations) of the fax. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725-27 (7th Cir. 2011); *Travel 100 Grp. Inc. v. Mediterranean Shipping Co.*, 383 Ill. App. 3d 149 (2008).

In *CE Design*, the Seventh Circuit overturned the district court's grant of class certification because the defendants could assert a unique defense against the named plaintiff based on the fact that it, unlike other members of the class, had provided its fax number to a "Blue Book" service used to facilitate industry-wide marketing, and that subscribers to this "Blue Book" expected and consented *to receive ads by fax*. 637 F.3d at 725-27 (emphasis added). Similarly, in *Travel 100 Group*, the court found that the plaintiff travel agency had given express permission and invitation *for advertisements to be sent by third parties* by agreeing to the inclusion of its contact information in an international travel agency database, with the understanding that the database would release the information "to any industry supplier that may wish to use" the plaintiff's services. 383 Ill. App. 3d at 158-59 (emphasis added).

In each of these cases, the courts found that although the plaintiff had not directly consented to receiving a solicitation via fax from a particular defendant, it had done so by permitting its contact information to be included in certain databases/directories knowing others

---

the unsolicited faxes was also a "sender," despite not having any advertisements of its own in the fax. *Id.* at *5. The court noted that this theory would lead to the absurd result of TCPA liability automatically attaching to any manufacturer or distributor of any product promoted in an improperly sent fax advertisement. *Id.* Here, Plaintiff is not attempting to hold a manufacturer of a product that was advertised in an unsolicited fax liable under the TCPA, only AT&T, because its *own* company/product was advertised in its unsolicited fax.

6

had access to that information.[6] The allegations in the instant case do not indicate that Plaintiff ever intentionally publicized its contact information in any forum inviting solicitation by Defendant, or that it knew in agreeing to receive a fax from Wyndham (even if that assumption could be made at this stage) it would also be subject to advisements from Defendant. Thus, these cases do not provide guidance for the circumstances alleged in this case.

Based on the language of the regulations and subsequent case law, Defendant's argument—that Plaintiff's cause of action must fail because it did not allege it never gave Wyndham permission to send the fax—has no merit. Defendant concedes Plaintiff's Complaint alleges it never gave Defendant permission to send the fax. (Def.'s Mem. Supp. Mot. to Dismiss [Doc. # 40-1] at 5.) Defendant also concedes that it qualifies as a "sender," for its product was advertised in the fax. (*Id.*) Therefore, Plaintiff has properly alleged that the fax, whose "sender" was Defendant pursuant to the regulations, was unsolicited. Insofar as Defendant claims that the fax was solicited because of the relationship between Wyndham and Plaintiff, as Judge Bolden recently found, "[t]he issue of whether the faxes were solicited . . . is better determined at a later stage of this case." Ruling and Order on Defendants' Motion to Dismiss [Doc. # 46] at 6, *Gorss Motels, Inc. v. A.V.M. Enterprises, Inc.*, No. 3:17-cv-1078 (VAB) (D. Conn. Feb. 2, 2018).[7]

---

[6] Defendant also cites these same two cases in its Reply as refuting Plaintiff's argument that any consent provided to Wyndham cannot be transferred to AT&T. However, there are no allegations in the Complaint that Plaintiff consented to Wyndham and therefore the question of transferred consent is not within the scope of Defendant's Motion to Dismiss.

[7] Having found that the fax was alleged to have been unsolicited within the meaning of the TCPA, the Court does not address Defendant's argument that under *Yaakov v. FCC*, 852 F. 3d 1078 (D.C. Cir. Mar. 31, 2017) opt-out notices cannot be required in solicited faxes.

### B. Plaintiff has Standing to Assert its Claim[8]

To have standing, a plaintiff must allege actual injury, and a "bare procedural violation [of a statute], divorced from any concrete harm" is insufficient. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). But, as the Second Circuit has noted, under *Spokeo* "some violations of statutorily mandated procedures may entail the concrete injury necessary for standing." *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. Nov. 23, 2016). Thus, "where Congress confers a procedural right in order to protect a concrete interest, a violation of the procedure may demonstrate a sufficient 'risk of real harm' to the underlying interest to establish concrete injury without 'need [to] allege any *additional* harm beyond the one Congress has identified.'" *Id.* (quoting *Spokeo*, S. Ct. at 1549).

Defendant contends that to the extent Plaintiff's claims derive solely from an alleged failure to comply with the opt-out notice requirements, they should be dismissed for lack of standing. On this theory, Plaintiff has alleged only "purely technical" procedural harms related to the opt-out notice and has not alleged any specific harm suffered as a result of the deficiency. Because the Court has determined that Plaintiff adequately pled the fax was sent without prior express permission, and because this claim is not dependent upon its allegations that the opt-out notice did not comply with the regulations, Plaintiff has standing. Additionally, even if Plaintiff's cause of action were based solely upon a non-compliant opt-out notice, the Complaint's allegations of injury suffered are sufficient to give Plaintiff standing.

---

[8] Plaintiff correctly notes that dismissal for lack of standing falls under 12(b)(1), because it constitutes dismissal for lack of subject matter jurisdiction. Nevertheless, to the extent Plaintiff is correct that this motion should have also been filed under Fed. R. Civ. P. 12(b)(1), the Court converts the motion to one brought under both rules, since the Court is required to address its subject matter jurisdiction when the issue arises, including *sua sponte* as necessary. *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006).

Plaintiff alleges Defendant's unsolicited faxes caused loss of toner consumed in the printing of Defendant's fax; use of its telephone lines and fax machine; the waste of its employees' time spent receiving, reviewing, and routing the unauthorized fax; and interference with Plaintiff's privacy interest in being left alone. (Am. Compl. ¶ 41.) Defendant does not dispute that these allegations are sufficient to show concrete injury under *Spokeo*. *See e.g., Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) ("Congress sought to protect consumers from the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax advertisements."); *Gorss Motels, Inc. v. Sysco Guest Supply, LLC*, No. 3:16-cv-1911-VLB, 2017 WL 3597880, at *5 (D. Conn. Aug. 21, 2017) ("[I]t is clear there exists ample case law supporting the proposition that the TCPA has created a 'legally cognizable interest' in protecting individuals and entities from unwanted faxes, and that the violation of the statute creates a 'real' and 'not abstract' harm.").

However, Defendant improperly focuses on whether Plaintiff alleged it suffered any harm stemming from not being able to opt-out of future faxes, ignoring that failure to comply with the opt-out notice requirements essentially renders a fax unsolicited and therefore carries with it the same injury. *See Swetlic Chiropractic & Rehabilitation Center., Inc. v. Foot Levelers, Inc*, 235 F. Supp. 3d 882, 889 (S.D. Ohio 2017) ("the statute makes no differentiation in the harm caused or the penalty assessed whether a defendant fails to meet the opt-out language required or lacks permission to send the fax. In either case, the fax is an impermissible unsolicited fax advertisement that wastes time and impedes commerce."); *Davies v. W.W. Grainger, Inc.*, 2016 WL 6833902, at *2 (N.D. Ill. Nov. 21, 2016) (holding that if the op-out notice was *not* clear and conspicuous, the plaintiff suffered an injury the moment he received the fax and that this injury was the same as the

plaintiff would have suffered if the fax had not included any opt-out notice at all).[9] Accordingly, the same concrete interests Congress sought to protect by prohibiting unsolicited fax advertisements also pertain when the opt-out language is non-compliant, as is alleged here. Plaintiff need only allege this procedural right was violated and not any "*additional* harm" in order to "demonstrate[] a sufficient 'risk of real harm' to the underlying interest." *Strubel*, 842 F.3d at 189 (quoting *Spokeo*, S. Ct. at 1549).

The question of whether the fax contained a proper opt-out notice, much like whether it was solicited or sent in accordance with an EBR, is a factual dispute that must be addressed on a fuller record at the summary judgment stage. *See* Ruling and Order on Defendants' Motion to Dismiss [Doc. # 46] at 10, *Gorss Motels, Inc. v. A.V.M. Enterprises, Inc.*, No. 3:17-cv-1078 (VAB) (D. Conn. Feb. 2, 2018). At this early stage of the proceedings, Plaintiff has made sufficiently concrete and particularized allegations of injury in its Complaint to support standing. *See id.*

III. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is DENIED.

IT IS SO ORDERED.

　　　/s/
Janet Bond Arterton, U.S.D.J.
Dated at New Haven, Connecticut this 15th day of March 2018.

---

[9] Defendant directs the Court's attention to a single district court ruling in which the court held that under *Spokeo* the plaintiff had not alleged a concrete and particularized injury arising from an alleged deficiency in an opt-out notice. *See St. Louis Heart Ctr. Inc. v. Nomax*, 2017 WL 1064669, at *2 (E.D. Mo. Mar. 20, 2017). There, the court reasoned that the opt-out notice conveyed "the means and opportunity to opt-out . . . regardless of whether the faxes also meet all of the technical requirements of 47 C.F.R. § 64.1200." *Id.* However, the court noted that the plaintiff "both invited and did not rebuke" the complained-of faxes. *Id.* Thus, *Nomax* is distinguishable from the facts at issue here.