UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GORSS MOTELS, INC, <br> *Plaintiff,* <br> v. <br> AT&T MOBILITY LLC and AT&T MOBILITY NATIONAL ACCOUNTS LLC, <br> *Defendants.* | Civil No. 3:17cv403 (JBA) <br><br> February 14, 2019 |

**RULING DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Gorss Motels, Inc., individually and as representative of a proposed class, brings suit against AT&T Mobility and its affiliate AT&T Mobility National Accounts for violation of the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, for sending an unsolicited fax advertisement. Plaintiff moves for class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(3). (Pl.'s Mot. for Class Cert. [Doc. # 56].) Oral argument on Plaintiff's motion was held on December 5, 2018. For the reasons that follow, Plaintiff's Motion for Class Certification is denied.

**I. Background**

Plaintiff is the former corporate owner of a Super 8 Motel which was a franchisee of Wyndham Hotel Group. (Ex. 14 (Purchase and Sale Agreement) to Defs.' Opp. to Mot. for Class Cert. [Doc. 63-5] at 1; Ex. D to Ex. 7 (Franchise Renewal App.) to Defs.' Opp. [Doc. # 63-5] at 1.)

Defendants are providers of telecommunications services to customers throughout the United States. (Ex. 5 (Phillips Decl.) [Doc. # 61-4] ¶ 2.) Defendant AT&T Mobility National Accounts provides wireless services to corporate clients, including Wyndham Worldwide Operations, a subsidiary of Wyndham Hotel Group. (*See* Defs.' Opp. at 4; Ex. 6 (Powderly Decl.) to Defs.' Opp. [Doc. # 61-10] ¶¶ 2-3.) Through its subsidiary Worldwide Sourcing Solutions, Inc.,

Wyndham provides access to its franchisees to discounted services from partners, including AT&T. (Ex. 8 (Gattuso Decl.) [Doc. # 61-19] ¶¶ 2-3, 6.) Defendants argue that Wyndham also provides a "marketing program designed to communicate how the franchisees can benefit from the AT&T/Wyndham relationship." (Defs.' Opp. at 5.) Defendants say that "[t]hrough this program, Wyndham authorized AT&T to contact its franchises" and that "[a]mong several other tools, the marketing program provided for a 'fax blast' option to send faxes describing AT&T's discounts to the assorted franchisees." (*Id.*) Defendants also argue that the "contact information used to send those faxes came solely from Wyndham's franchisees" and that that "information was freely given by Gorss Motels and other franchisees with the expectation that it would be used to contact them." (*Id.*)

Plaintiff alleges that Defendants sent fax advertisements to Plaintiff and a class of other persons, "including, but not limited to," an unsolicited advertisement sent "[o]n or about January 13, 2014." (Am. Compl. [Doc. # 39] ¶ 11; *see* Ex. A (the Fax) to Pl.'s Mot. for Class Cert. [Doc. # 56-3].) The fax advertises: "Attention Wyndham Hotel Group owners and hotel employees: Enjoy your 2014 Wyndham Hotel Group benefits! Visit your AT&T Premier online store at att.com/wireless/wyndhamfranchises for your exclusive specials," going on to list several offers for new cellular devices and plans. (The Fax.) In small print at the bottom of the Fax, it explains:

> All products and services are manufactured and/or provided by AT&T and not Wyndham Worldwide Corporation (WWC) or its affiliates. Neither WWC nor its affiliates are responsible for the accuracy or completeness of any statements made in this advertisement, the content of this advertisement (including the text, representations and illustrations) or any material on a website to which the advertisement provides a link or reference. Please refer to the applicable brand specifications for your property prior to purchasing products. This facsimile contains confidential information intended only for use by Wyndham Worldwide entities and Wyndham Hotel Group franchisees. . . . If you have received this facsimile by error, please immediately notify us by emailing

2

strategic.sourcing@wyn.com. To opt out from future faxes, email strategic.sourcing@wyn.com or call this toll-free number: (877) 764-4212.

(*Id.*) Plaintiff alleges that this fax was successfully transmitted to 3,886 fax numbers. (*See* Ex. B (Biggerstaff Report) to Pl.'s Mem. [Doc. # 56-4] at 4.)

Plaintiff argues that the fax sent by Defendant violated the Telephone Consumer Protection Act, as amended by the Junk Fax Protection Act, because the fax was "unsolicited" and its opt-out language did not meet statutory and regulatory requirements. (Am. Compl. ¶ 2.)

## II. Discussion

### A. Rule 23 Class Certification

Plaintiff seeks certification of the following class:

> All persons or entities who were successfully sent a facsimile on or about January 14, 2014, stating: "Visit your AT&T Partner online store at att.com/wireless/wyndhamfranchisees for your exclusive specials such as $50 new smartphone activation credit, $100 instant rebate on all tablets while supplies last, 16% on qualifying monthly charges," and "Learn about AT&T's new Mobile Share Value Plan!," and "For a limited time, switch from T-Mobile and receive up to $450 when you trade in your current smartphone!."

(Pl.'s Mot. for Class Cert. at 2-3.)

A party seeking class certification under Fed. R. Civ. P. 23 "'must affirmatively demonstrate . . . compliance with the Rule,' and a district court may only certify a class if it 'is satisfied, after a rigorous analysis,' that the requirements of Rule 23 are met." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 237–38 (2d Cir. 2012) (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)). The proponent of class certification bears the burden of showing that the proposed class satisfies Rule 23's requirements. *Glatt v. Fox. Searchlight Pictures*, 811 F.3d 528, 538 (2d Cir. 2016).

Although the class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979), some courts have recognized that "class certification is normal" under the TCPA "because the main questions, such as whether a given fax is an advertisement, are common to all recipients," *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 683 (7th Cir. 2013).

The requirements of both Rule 23(a) and (b) must be met for a class to be certified. Under Rule 23(a), a class may be certified only if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Rule 23 also incorporates an "implied requirement of ascertainability" of the class. *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (internal quotation marks omitted). Plaintiff moves for certification under Rule 23(b)(3), which permits the certification of a class only where "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." For the reasons that follow, the Court will address only Rule 23(b)(3)'s predominance requirement and will not reach the other requirements for class certification.

### B. Rule 23(b)(3) Predominance

Plaintiff moves for class certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In making that determination, courts should consider: "(A) the class

4

members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Rule 23(b)(3)'s predominance requirement is "far more demanding than Rule 23(a)'s commonality requirement." *Amchem Products v. Windsor*, 521 U.S. 591, 623-24 (1997). Even "assuming some questions may be answered with generalized proof, [class certification should be denied if they] are not more substantial than the questions requiring individualized proof." *Glatt*, 811 F.3d 528, 539 (vacating certification of class "because the most important question in this litigation cannot be answered with generalized proof"). The "predominance" requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.

The purpose of the predominance requirement is to "ensure[] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007) (alteration omitted) (quoting *Amchem*, 521 U.S. at 615). "Therefore the requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Myers*, 624 F.3d at 547 (internal citations omitted). The question therefore is whether the five legal

questions identified by Plaintiff as common to all proposed class members[1] "predominate" or are "more substantial" than issues identified by Defendants which would require proof individualized to each class member.

### i. Individual Consent to Receive the Fax

Defendants argue that in this case, the question which will predominate and will drive the litigation is a question of fact which is not subject to class-wide determination: whether each member of the class consented to receive the Fax. Defendants contend that only those recipients who did *not* consent to receive the Fax have a claim for relief, rendering the question of consent—a question which cannot be determined on a class-wide basis—the driving question in this litigation and thereby rendering Plaintiff's proposed class unsuitable for certification.

Plaintiff argues that whether class members consented to receive the Fax is legally irrelevant, because even consented-to faxes must contain adequate opt-out language, which Plaintiff alleges that the fax here did not. (Pl.'s Reply at 9-10.) Therefore, Plaintiff explains, common legal questions regarding the Fax will predominate.

---

[1] Plaintiff identifies five common questions: "(1) Whether the Fax constitutes an 'advertisement'; (2) Whether Defendants meet the definition of 'sender' for direct TCPA liability, meaning a 'person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement,' 47 C.F.R. § 64.1200(f)(10); (3) Whether Defendants can rely on prior express permission or invitation purportedly obtained by WWSS; (4) Whether the opt-out notice complies with FCC requirements; (5) Whether Defendants' acts were 'willful' or 'knowing' under the TCPA and if so whether the Court should treble the statutory damages." (Pl.'s Mem. at 14.)

### a. The Junk Fax Prevention Act

Sending an "unsolicited advertisement" to a fax machine is prohibited, with limited exceptions. 47 U.S.C. § 227(b)(1)(C). An "unsolicited advertisement" is one which was "transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *Id.* § 227(a)(5). Unsolicited advertisements may be sent where (1) the sender and recipient have an "established business relationship," (2) the sender obtained the recipient's fax number through "the voluntary communication of such number, within the context of such established relationship" or "a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available" its fax number for distribution, and (3) the advertisement contains a notice which meets the statutory and regulatory requirements for opt-out language. *Id.* § 227(b)(1)(C).

47 USC § 227(b)(2) also empowers the Federal Communications Commission (FCC) to "prescribe regulations to implement the requirements" of the provisions regarding unsolicited advertisements.

### b. The Solicited Fax Rule and *Bais Yaakov*

Plaintiffs' argument is based on 47 C.F.R. § 64.1200(a)(4)(iv), regulations promulgated by the FCC under the Telephone Consumer Protection Act of 1991 and the Junk Fax Prevention Act of 2005. Those FCC regulations require that even a "facsimile advertisement that is sent to a recipient that has provided prior express invitation or permission to the sender [i.e., a solicited fax] must include an opt-out notice that complies with" the opt-out language requirements for unsolicited faxes (the "Solicited Fax Rule"). Therefore, Plaintiffs argue, whether individual class members consented to receive the Fax is irrelevant, and the success of the class's claims turns on

7

common legal questions, like the adequacy of the Fax's opt-out language and the Defendants' liability for the Fax's transmission.

Defendants argue that the Solicited Fax Rule should not be applied here because it was rejected by the D.C. Circuit in *Bais Yaakov of Spring Valley v. Federal Communications Comm.*, 852 F.3d 1078 (D.C. Cir. 2017), *cert. denied*, 138 S. Ct. 1043 (2018). In that case, the D.C. Circuit invalidated the Solicited Fax Rule, finding that "the Act does not require (or give the FCC authority to require) opt-out notices on solicited fax advertisements." *Bais Yaakov*, 852 F.3d at 1082. Under *Bais Yaakov*, solicited and unsolicited faxes are once again subject to different requirements regarding the inclusion of opt-out language. The applicability of *Bais Yaakov* to this case therefore determines whether the Court would be asked to make individualized, fact-based determinations regarding each proposed class member's consent to receive the Fax.

Plaintiffs argue that because it was decided in a different circuit, *Bais Yaakov* is not binding over this Court. Defendants respond that *Bais Yaakov* does control here because the D.C. Circuit was acting "as the reviewing court under the Hobbs Act," which grants "exclusive" jurisdiction and renders that court's decision "not subject to collateral attack in a district court." (Defs.' Opp. at 13.)

The Second Circuit recently recognized that

> [u]nder the Hobbs Act, the courts of appeals 'ha[ve] exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders' of the FCC that are reviewable under 47 U.S.C. § 402(a). 28 U.S.C. § 2342(1). When agency regulations are challenged in more than one court of appeals, as they were in the present case, 28 U.S.C. § 2112 requires that the multidistrict litigation panel consolidate the petitions and assign them to a single circuit. Challenges to the 2015 Order were assigned to the D.C. Circuit, which thereby became 'the sole forum for addressing ... the validity of the FCC's' order."

8

*King v. Time Warner Cable, Inc.*, 894 F.3d 473, 476 n.3 (2d Cir. 2018) (reversing district court's grant of partial summary judgment which "relied on an incorrect interpretation of the statute that was in turn premised on deference to an FCC order that is no longer valid").

The Fourth and Ninth Circuit Courts of Appeals have also held that decisions which resolve challenges to FCC regulations that have been consolidated in a single circuit by the Multidistrict Litigation Panel are binding nationwide. *See GTE South, Inc. v. Morrison*, 199 F.3d 733, 743 (4th Cir. 1999) ("Pursuant to § 2112(a) the multidistrict litigation panel consolidated the petitions and assigned the matter by lottery to the Eighth Circuit. *See* 28 U.S.C. § 2112(a)(3). That circuit is now the sole forum for addressing challenges to the validity of the FCC's rules. *See id.* § 2112(a)(5)."); *Peck v. Cingular Wireless, LLC*, 535 F.3d 1053, 1057 (9th Cir. 2008) ("The Judicial Panel on Multidistrict Litigation consolidated challenges to the [FCC's] Second Report and Order in the Eleventh Circuit . . . . [T]he Eleventh Circuit's decision regarding the validity of the Second Report and Order is binding outside of the Eleventh Circuit. Such a result is consistent with this and other Circuits' application of the Hobbs Act.").

Courts which have directly considered the impact of *Bais Yaakov* outside the D.C. Circuit have generally either found that it is binding nationally or chosen to follow its reasoning and result. *See, e.g., Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 467 (6th Cir. 2017) (holding that the "argument that the district court would be required to turn a blind eye to the D.C. Circuit decision invalidating the Solicited Fax Rule, and instead follow the 2015 Order that relies on an abrogated rule, is without merit"); *Raitport v. Harbour Capital Corp.*, 312 F. Supp. 3d 225, 233 (D.N.H. 2018) ("This Court joins those that have concluded that, upon consolidation in the D.C. Circuit by the Multidistrict Litigation Panel, that court of appeals became the sole forum for challenging the FCC's Solicited Fax Rule. That court invalidated the Solicited Fax Rule,

9

and its holding is binding upon this court."); *Gorss Motels, Inc. v. Safemark Systems, LP*, 2018 WL 1635645, at *6 (M.D. Fl. April 5, 2018) (citing cases which have followed *Bais Yaakov* and holding that, "without determining whether *Bais Yaakov* is binding in this Circuit, the Court finds the opinion to be persuasive" and denying motion for class certification because questions of individual consent predominate over common questions).

In light of the position of the Second Circuit regarding the binding effect of consolidated appeals of FCC regulations, the text of the statute, the reasoning of the *Bais Yaakov* decision, and the position of other courts which have addressed this issue, the Court will similarly join those that have concluded that they are bound by the holding of *Bais Yaakov*. Thus, the Solicited Fax Rule does not control here, and the Junk Fax Prevention Act therefore imposes different opt-out language requirements on solicited and unsolicited faxes. Before addressing legal questions common to the proposed class, the Court will therefore have to determine whether each of the several thousand potential class members consented to receive the Fax.

Defendant has suggested a variety of potential sources of individual consent to receive the Fax and has submitted evidence in support of those sources, including a wireless customer agreement which suggests that Fax recipients who were wireless customers of Defendants may have consented to receive faxes like the one at issue here in their service contract and Wyndham franchisee agreements and forms. In response, Plaintiff has not proffered any viable method of determining individual consent which does not require individualized, fact-based "mini-trials" for each potential class member, nor has Plaintiff made any persuasive showing that these mini-trials would not come to predominate this litigation if a class were certified. *See Glatt* 811 F.3d at 538 (holding that plaintiff bears burden of showing that predominance requirement is met). Plaintiff here has not met its burden to demonstrate that the requirements of Rule 23 are met. *See Raitport*,

312 F. Supp. 3d at 234-235 (citing cases "den[ying] class certification in cases involving allegedly defective opt-out notices and arising under the TCPA" because of question of individualized consent, and denying class certification for Plaintiff's failure to show that "questions of law common to class members predominate").

### III. Conclusion

For the foregoing reasons, Plaintiff's Motion for Class Certification [Doc. # 56] is DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 14th day of February 2019.